Parsons v. Moses.

## Parsons v. Moses.

1. OCCUPYING CLAIMANT: PERSONAL POSSESSION. The personal possession of the claimant of real estate is not essential to constitute him an occupant; the occupancy of the tenant is the occupancy of the landlord.

2. SAME: CLAIM TRANSFERABLE. The claim of an occupying claimant for improvements made under color of title is the subject of sale and transfer; and the assignee of such a claim takes all the right of action of the assignor. *Craton* v. *Wright, ante.*

3. SAME: SET-OFF. In an action under the occupying claimant law to recover the value of permanent improvements made upon real estate, the owner may set off the rents and profits which have accrued during the time in which the improvements have been made.

4. SAME: LIMITATION. The limitation upon the right of the owner to recover for the value of rents and profits of real estate provided in section 3576 of the Revision does not apply to actions under chapter 97 of the Revision to recover the value of permanent improvements made under color of title.

5. SAME: VERDICT CONCLUSIVE. The verdict of the jury in an action of right, fixing the value of the rents and profits for the six years next preceding the commencement of such action, is conclusive evidence of such value in a subsequent action under the law for the benefit of occupying claimants.

6. SAME: RENTS AND PROFITS AFTER JUDGMENT. In an action under the occupying claimant's law the defendant is entitled to set off against plaintiff's demand the rents and profits accruing after the verdict in the action of right and before verdict in the action pending.

7. SAME: QUERE. Is the owner entitled to compensation for rents and profits accruing after the value of the permanent improvements has been determined in a proper proceeding?

*Appeal from Lee District Court.*

MONDAY, JUNE 20.

THIS was an action by Charles Parsons to recover for certain improvements under the occupying claimant law. It is alleged in his petition, and admitted in the answer, that on the 14th day of September, 1863, the defendants in this action (D. B. and W. Moses) recovered a judgment in an action of right against the present plaintiff (Parsons),

for the title and possession of eighty acres of land in Lee county, and also $200 damages for use and occupation. Thereupon, on the same day, the present plaintiff brought this action, claiming pay for improvements made by him and those under whom he claims. The petition contained the necessary averments under the statute, and alleged that the improvements had been made in good faith during a period of twenty-five years.

Answer, 1st. In denial, except an admission by the defendants that they had recovered judgment against the plaintiff in an action of right and $200 damages; 2d. That the plaintiff had never personally and actually occupied the premises; 3d. By way of set-off, the said judgment of $200 recovered in the action of right; 4th. A claim for use and occupation of the land for fifteen years prior to 1857, and for use and occupation after the date of the judgment in the action of right. Jury trial. Verdict for the plaintiff. The errors assigned will be referred to in the opinion. Defendants appeal.

*John N. Rogers* and *Withrow & Smith* for the appellants.

*J. L. Rice* and *J. W. Rankin* for the appellee.

DILLON, J.—I. The first error assigned by the appellants is, the giving by the Court, at the plaintiff's instance, of the following instruction:

"In order to entitle plaintiff (Parsons) to recover in this action, it is not necessary for him to prove that he personally occupied the land in question, but so far as the occupation of said land is concerned, it is sufficient for him to show that his tenants occupied."

The statute, among other things, requires that the party who claims the benefit of its provisions in favor of occupying claimants (Rev., ch. 97), shall be "an occupant of land." And the argument of appellant's counsel is, that

one cannot be an occupant unless he is in the *personal* possession of the premises.

The general principle of the law is, that what one does by another he does by himself; that possession by a tenant is possession by the landlord, and that the landlord is liable for use and occupation (Taylor, § 641), or for mesne profits, though in possession by his tenants only. *Chirac* v. *Reinicker*, 11 Wheat., 280. And the present plaintiff was, in the action of right, held liable for $200, as rents and profits of the land in question.

The statute is remedial. It was designed to compensate a party who has color of title, and who, in good faith, has expended his money in making valuable improvements upon premises, of which he is afterwards found not to be the rightful owner. Under the statute (Rev., §§ 2268, 2269), color of title may arise in other ways than by occupancy of the land, as where a purchase is made in good faith at an unauthorized judicial or tax sale.

If such a purchaser should, in good faith, make improvements upon the land, though he personally never entered upon its possession, we think he is within the remedial design and purpose of the statute.

In the case at bar, the color of title may not have arisen in this way, yet the argument is a fair one, to show that the statute is not necessarily confined or designed to be confined to actual personal occupants.

Upon the best consideration we have been able to give to the subject our conclusion is, that in this respect the direction of the Court below to the jury was right, and it is, therefore, affirmed.

II. The Court, on the trial below, ruled that the plaintiff might recover for improvements made by those under whom he claims, as well as for those made by him, or by his tenants for him, after his purchase; in other words, the Court

held that the claim of an occupying claimant for improvements was the subject of sale and transfer.

This ruling is assigned as error by the appellants. Since the argument, this Court, in the case of *Craton* v. *Wright, ante,* has determined this point in favor of the view held by the Court below. We need not restate the grounds upon which this conclusion rests.

III. By recurring to the statement, it will be seen that the defendants in this action recovered in 1863, a judgment in an action of right, against the plaintiff, and also $200 damages for the use and occupation of the premises by the plaintiff.

In this posture of the case, the plaintiff asked, and the Court gave, the following instruction:

"That the defendants in this action cannot set off against the plaintiff's claim for improvements the value of the rents and profits of said land, or any sum for the use and occupation thereof, prior to six years before the commencement of the action of right, nor since the said action was commenced; nor since judgment therein was rendered."

This direction to the jury is now assigned as error. This raises in this State a new and important, as well as somewhat difficult question.

In the chapter of the Revision (ch. 97), upon the subject of "Rights of Occupying Claimants," there is no limitation of time upon the occupant as to his right to recover for improvements. Nor is there in this chapter any limitation upon the right of the owner to recover rents and profits, the chapter being entirely silent upon the subject. The idea of a six years' limitation on the owner's right to recover against the occupant for use and occupation, finds no support in chapter 97, which is the one especially relating to this subject.

But this supposed limitation on the right of the owner, is based upon a section (3576) found in chapter 144, enti-

tled "Actions for the Recovery of Real Property," a paraphrase for ejectment or actions of right. The section above cited (3576) is as follows:

"The plaintiff (in ejectment) cannot recover for the use and occupation of the premises for more than six years prior to the commencement of the action."

There is another section in the same chapter, bearing upon the general subject, which is as follows:

"§ 3596. When the plaintiff in an action of this nature (ejectment or right) is entitled to damages for withholding, or using, or injuring his property, the defendant may set off the value of any permanent improvements made thereon, to the extent of the damages, unless he prefers to avail himself of the law for the benefit of occupying claimants."

It will aid us to understand the meaning and purpose of the several statutory provisions above referred to, by recurring briefly to the rights of the parties at common law, or in the absence of the statute.

By the English and American common law, the true owner recovers his land in ejectment, without liability to pay for improvements, which may have been made upon it by an occupant without title. Improvements annexed to the freehold, the law deems part of it, and they pass with the recovery. Every occupant makes improvements at his peril, even if he acts under a *bona fide* belief of ownership. 2 Kent Com., 334. Such is the rigid rule of the common law. It is founded upon the idea, that the owner should not pay an intruder, or disseisor, or occupant, for improvements which he never authorized. It is supposed to be founded in good policy, inasmuch as it induces diligence in the examination of titles, and prevents intrusions upon and appropriations of the property of others.

Chancery, borrowing from the civil law, made the first innovation upon the common law doctrine. And it came at length to be held in equity, that when a *bona fide* pos-

sessor of property (for equity, no more than law, would aid a *mala fide* possessor) made meliorations and improvements upon it in good faith, and under an honest belief of ownership, and the real owner was for any reason compelled to come into a court of equity, that court applying the familiar maxim, that he who seeks equity must do equity, and adopting the civil law rule of natural equity, would compel him to pay for those improvements or industrial accessions, not the cost indeed, but so far as they were permanently *beneficial* to the estate, and enhanced its value. Story Eq. Jurisp., 779*a*, 799*b*; *Putnam* v. *Ritchie*, 6 Paige, 390; *Bright* v. *Boyd*, 1 Story Rep., 478, enriched by the learning and research of that distinguished jurist; *S. C.*, 2 Id., 605; *Green* v. *Biddle*, 8 Wheat., 77; Willard's Eq., 312; Sugd. on Vend., chap. 22, §§ 54, 55, 57.

This was the extent of relief to *bona fide* possessors. "I have not," says Chancellor WALWORTH, in *Putnam* v. *Ritchie*, 6 Paige, 390, "been able to find any case either in this country or in England wherein the Court of Chancery has assumed to give relief to a *complainant* who has made improvements upon land, the legal title to which was in the defendant, where there has been neither fraud nor acquiescence on the part of the latter after he had knowledge of his legal rights."

Courts of law next modified the strict rule of the common law (which makes the occupant of land which is owned by another, no matter how good the faith of the occupant may be, liable for the rents and profits) to this extent, viz., that where such owner brought his action for mesne profits, which courts of law treated as an equitable action, the *bona fide* occupant might set off or recoup the value of his permanent improvements to the extent of the rents and profits demanded, but no farther. *Jackson* v. *Loomis*, 4 Cow., 168; *Murray* v. *Governeur*, 2 Johns. Cas., 438; *Green* v. *Biddle*, 8 Wheat., 1, 75, 76; 2 Kent, 335, and

cases in note; *Putnam* v. *Ritchie*, 6 Paige, 404; *Hilton* v. *Brown*, 2 Wash. C. C. R., 165; *Davis* v. *Smith*, 5 Geo., 274.

The equity of the *bona fide* possessor who had made lasting and permanent improvements upon lands which turned out to be another's, was so strong and persuasive as to force its recognition to this partial extent by courts of law, without the aid of statute.

We thus see that § 3596 of the Revision above quoted, is but declaratory of the law on the same subject, as held generally by the more modern cases in this country.

The right of the *owner* to rents and profits exists, as we have seen, in full force without the aid of any statute. It is an incident of the ownership. The struggle has been to find a way to relieve the *bona fide* occupant who loses his improvements from also paying full rent for the land. And, aside from statute, it is only done to the extent of allowing him, when sued for the rents and profits, to set off against them the value of permanent improvements. If the improvements exceeded the claim of the owner for profits, no compensation for the excess could be allowed.

The ground of this equity or right in the occupant is thus expressed by Lord KAIMS (Book III, Ch. 1, p. 276): "It is a maxim suggested by nature that reparations and meliorations, bestowed upon a house or upon land, ought to be defrayed out of the rents."

Now, our statute, when the owner brings his action of ejectment, limits his right to recover a money judgment for use and occupation to six years before suit brought.

The occupying claimant law enlarges the rights of the *bona fide* possessor in these two particulars: 1st. He can recover for improvements in a direct affirmative proceeding against the owner; and, 2d. He is not limited in the amount of his recovery to the value of the rents and profits.

Where he has not occupied more than six years, and where his improvements have all been made within the six

years, the case is a plain one. He must pay rent for the full time occupied; and he is to be allowed the value of his permanent improvements, even if that value exceeds the rents.

But the case at bar is more complex.

The plaintiff claims for improvements made by others, extending back for the period of twenty-five years. And we have held that he is entitled by virtue of his purchase to recover for the improvements made by those under whom he claims. But he now insists that the owners' claim for use and occupation shall not be commensurate in point of time with his claim for improvements. He further claims, that while he is entitled to the value of improvements made by prior occupiers, the value of the use of the land by those occupiers shall not be applied towards the payment of those improvements. These claims must strike every fair mind as inequitable and unjust. They ignore, or, rather, they subvert, the very ground and reason upon which the equity of the occupant is based.

Equitably and rightfully the rents and profits each year go to pay for the improvements, either wholly or *pro tanto*, as the case may be. And there is nothing in the statute or in the section limiting direct recoveries for use and occupation to six years, which, by any fair construction, militates against this view.

Defendants claimed in this case to be allowed for rents and profits for fifteen years, before the action of right. The court below disallowed the claim. This, we think, was wrong. The true view, in our judgment, is this: Suppose fifteen years before, $100 worth of improvements had been made by the plaintiff's assignor. In settling the account between the owner and the occupant, these are to be allowed to the latter. But if the value of the use of the land to the plaintiff's assignor was worth $100 for the same year, the account is balanced and the improvements paid for.

If, the next year, the rent or use of the land was worth more than the improvement made, then for any subsequent improvements the occupant is, to the extent of this excess, paid in advance.

If, on the other hand, the value of the improvements for that year, exceeded the value of the rent or use, the value of the use or rent operates as a payment for the improvements *pro tanto*.

With these illustrations, we trust that the view we entertain is made perspicuous.

Our conclusion is amply supported by the cases of *Whiting's heirs* v. *Taylor's heirs*, 8 Dana, 403, 421; and the same case, 9 Dana, 399. The owners (Whiting's heirs,) say the Court, in the former case, " are entitled to an account of the rents and profits, subject to all equitable deductions; and although they cannot, against the plea of the statute of limitations, recover rents for more than five years before the commencement of this suit, they are entitled to set off the rents and profits for *previous years* and of the *whole* period, as far as may be necessary, against any claim which the defendants (the possessors or occupants), or any of them may have in equity to be compensated for amelioration to the land, and to improvements made upon it in good faith." 8 Dana, 442.

It appears from the report in 9 Dana, *supra*, that Taylor took possession of the land in 1807. Suit was brought by Whiting's heirs in 1832 to obtain the possession and title of the land; and under the statute, therefore, their claim for rents prior to five years before suit brought, that is, prior to 1827, would be barred by the Kentucky statute. The action was not determined until 1839.

In the case in 9 Dana, 402, the Court say: " There was error in not setting off the rents, which had accrued between 1807 and 1827, against the improvements. Such a set-off was intended by this Court." By the language

above quoted from 8 Dana, "this Court meant of course that the rents accruing before 1827, though barred, and *because* they were barred, should be *first* set off against any claim for improvements and ameliorations; and that then, if necessary, and so far as necessary, to extinguish the claim for improvements, &c., the rents not barred should be also set off against it." "Why should there be a recovery for all the improvements, and no allowance be made by set-off or otherwise, of any rent accruing before 1827. To the extent of these profits when received, improvements then made were paid for in fact when they were made; and so far as there may have been an excess of profits over improvements, subsequent improvements were paid for before they were made." 9 Dana, 402; see also *Hilton* v. *Brown*, 2 Wash. C. C., 165; *Dungan* v. *Von Phul*, 8 Iowa, 263; and directions to the master in *Bright* v. *Boyd*, 1 Story, 478, 499, in the concluding part of the opinion.

The substance of our holding then is, that the rents and profits anterior to the six years, are not barred by the recovery for the six years in the action of right, and that the value of the use for the period prior to the six years is to be applied in payment, partial or full, as the case may be, for improvements made during the same period. The contrary view, held by the court below, was, therefore, in the opinion of this Court, erroneous.

IV. As to the claim for use and occupation for the six years before the bringing of the action of right, that was settled by the judgment in that action in favor of the defendants for $200.

And this sum would be considered as including all that defendants were entitled to during the six years, and down to the date of the judgment in the action of right. In this respect the ruling of the District Court was correct.

After the judgment in favor of the defendants in the action of right, they could not, under the statute (§ 2264),

obtain possession, because of the institution of this proceeding by the plaintiff. And pending it, the law, it is true, allows the plaintiff to remain in possession. But this is not equivalent to saying that he shall remain in possession of property which has been adjudged not to be his, without liability to the owner for its use. The plaintiff's claim for improvements is unsettled, and its amount unascertained. The defendants cannot, therefore, pay it, or even tender it. It is no hardship on the plaintiff to pay for the use during the time that the amount of his claim is being judicially ascertained. If, when it is thus ascertained, the owner neglects to pay it, it will be a different question, and one which is not now before us, whether he can insist upon a recovery for rents and profits after that time; and even in this event, if the claimant be allowed interest on the amount adjudged to him for improvements, and yet remained on the land, it might not be inequitable to charge him for its use. But as this precise point does not arise on the record, we do not decide it.

Our conclusion on this part of the case, then, is, that the court below was right in holding that the $200 recovered for use and occupation in the action of right, was conclusive and final for the six years next before the bringing of that action, and down to the date of the judgment therein, but was wrong in holding that there could be no allowance to the defendants for the plaintiff's occupation of the premises *after* the judgment in the action of right, and pending the present action of the plaintiff.

In *Whitiny* v. *Taylor*, 9 Dana, 399, the owner was allowed for rents and profits down to the date of the Commissioner's report.

The cause will be remanded for a new trial and for further proceedings not inconsistent with this opinion.

Reversed.

LOWE, J., took no part in the decision of the case.